Case number 152387, George J. Vendura, Jr. v. Jonathan Boxer, et al. Good morning, Mr. Rosenberg. Good morning, Your Honors. My name is Stephen Rosenberg. May it please the Court, I represent the appellant, George Vendura. With the Court's permission, I'd like to reserve two minutes for rebuttal. You may. Thank you. Initially, to place this in context, Mr. Vendura is a physicist and a long-time employee of Northrop Grumman and a long-time participant in the pension plan. At the end of the day in this case, if you step back from 30,000 feet, although there are a lot of moving parts, all we're really doing is asking the Court to enforce the terms of the plan as written by Northrop itself. The terms, as we lay it out in our briefs, entitle him to the relief he has sought. Now, the relief he's after is a little technical in the sense that it's not, I want a specific dollar amount, as in many pension cases where you would have somebody say, I was turned down for my annuity, I want the $20,000 a month. What we have going on here is almost actuarial. It's an account. It's math once you apply the written terms of the plan. Mr. Vendura joined TRW, the predecessor of Northrop Grumman, in 1993. He was injured in a workplace incident in June of 2000, goes out on long-term disability. Now, the plan administrator and the plan have interpreted the plan to mean that under that fact pattern, he's entitled to what the plan calls benefit service accrual time only for 12 years, 13 years. The seven years he's working and then five years of additional time while out on LTD based on a section of the plan, 2.02c, which places a five-year cap on benefit service accrual while out on LTD. I think we know that background. It doesn't, as is so often the case, somewhat changes on the standard of review that we apply here, whether it's de novo or this is to the determination of the plan administrator, whether it's looking at the much more deferential, arbitrary, and capricious. Doesn't your argument for de novo review depend entirely upon convincing us that the settlement agreement that your client entered into has to be referred to in order to make a determination as to how the plan applies in this case? Isn't that the key to your argument for de novo review? That is definitely the key to de novo review. So how, in what way does there have to be reference to the settlement agreement to decide how to read 2.2b and c of the relevant plan? What's the relationship between those documents? Certainly. The settlement agreement reflects an understanding between the plan sponsor, a contractual undertaking between the plan sponsor, Northrup, and the participant, Mr. Vendura, that he is to be treated as though he's an employee for all purposes. And part of being an employee is your accruing benefit service time. Now, the settlement agreement was Mr. Vendura represented himself. A lawyer probably would have taken the pension plan, mirrored it. He did not. So instead what they put in was a coordination clause saying, if there's any disagreement between the intent of the settlement agreement to show an employee for all purposes, including under benefit plans, and the terms of the benefit plan, we revert to what we're trying to do. It's nothing in the settlement agreement that addresses what credit he should get for years of service under the pension plan. Basically, the settlement agreement simply seems to say that whatever, as an employee, he's entitled to under those plans, he should get it. But to determine what he's supposed to get under those plans, you have to refer to the terms of the plan itself, don't you? Well, there's almost a two-step answer. The first is that, and that's why we talk about it in our brief, In 2008, Northrop tries to lay off Mr. Vendura for the exact terms of 2.02c, the exact same policy. Once you've passed five years on LTD, you don't have benefit service, you're gone. At that time, Northrop says, we interpret the settlement agreement to trump that. So on the one hand, they're saying it trumps it in layoff condition, the exact same company policy. And on the other hand, they're saying it doesn't trump it in the pension plan of 2.02c. Now, the issue of de novo review, as I've always understood it, of the concept of, if the administrator has to rely on outside legal interpretations of statute or contracts, is that unlike factual determinations or interpretation of the plan, where an administrator is thought to be a knowledgeable expert and to know more than everyone else, when it comes to these legal issues, the sense is there's no reason to defer to them. If we're trying to figure out how a separate legal obligation should fit together, that's the expertise of the court. And that renders the entire process de novo. And then the second step to the answer is, how does the difference between de novo and arbitrary and capricious apply here, and does it matter? Now, de novo matters because it makes this argument easier, it makes the court's job easier, because de novo turns this basically into a straight, traditional breach of contract dispute. The plan says X. Your honors are to decide how to apply X. What does the language expressly written of 2.02c and 2.02b mean? If we step out of it and we end up in arbitrary and capricious, you end up with discretion and a range of interpretive freedom open to the plan administrator, but they're still cabined by the actual language. They can't ignore the language per se and say, we meant something else and historically we've always done something else, when the language doesn't say it. Their discretion is still cabined by that language. Yes? Can I make sure I understand the argument? So I decide to settle my argument for a second. If you prove you're a participant and not an employee, you can't win under the plan, correct? I'm just not sure what you said. I can't win? Can't. If you prove you're a participant but not an employee, you can win even though you're not an employee? Exactly. And this reverts back to 2.02. So their argument is you can't. Their argument is because of the way it's set up together. Right. Under the plan itself, you have to be an employee to win. They argue. Well, I think that's what they say, but the problem with that construct is 2.02A through G talk about all sorts of circumstances that you and I wouldn't think of as an employee. But then their argument is if you prove you're a participant and not an employee, you lose under the plan. That's right. You dispute that. You say under the plan, we could win even if I didn't qualify as an employee. Exactly. But separate from that, you argue even if you grant their argument that you could only win under the plan if you were an employee, you say the settlement agreement determined that I'm an employee. Exactly. Correct? Correct. And you base that on the statement in the settlement agreement that says Vendura and MGS MSG agree that his employment with Broadway. Is that the key words? It's the fact that the settlement agreement at various points talks about you being employed or having an employment with them? The key is in, I think, it's A1365, and it's page one of the settlement agreement. What page is the appendix? Page one of the? A1365. It's the very front page of the settlement agreement itself. Okay. Paragraph one, separation from employment. It reads, Vendura and Northrop agree his employment will terminate upon any of the following events, whichever occurs first. And I believe that language can only mean you're an employee until one of those. And should there be any reason in the settlement agreement to have included that sentence apart from determining that he was an employee within the meaning of the deficit and employee in the plan? I can't think of any because everyone knew he was out. And because of that, you say that was an express determination then that whether or not they might have been right if we had a big fight and the administrator concluded that I was not an employee, you settled and agreed I am an employee. Exactly. And since they agreed to that, no one argues to us that if you are an employee, you lose. That's correct. Okay. That's correct. And then, so we understand that. And there's one last point I just want to say. So since what you're writing on the settlement agreement is we're just trying to determine whether the use of that word in saying when his employment terminates is from the settlement agreement. That's de novo. That's clearly de novo. Then, whether de novo or arbitrary and capricious, everybody agrees. There's not even a dispute among the parties that under the plan, you win as an employee. So we could use the word arbitrary and capricious, clear error, de novo, it wouldn't matter because there's just no dispute about that point. That's our position, yes. And I just want to clarify because there's a certain extent to which I believe the district court got off track by combining the two issues. I just want to make sure I'm clear. There's that argument, which is almost in its own silo, and then our argument that if you just forget about that, then you just apply the straight language of 2.02B, and he has satisfied all of those elements. Now, I don't believe on that piece of it that Northrop even tries to argue with a straight face or actually even argues that he does not satisfy the elements of 2.02B. They instead say, as the district court did, you have to combine the two together. But the plan doesn't say that. It says if you satisfy any of these plan terms in 2.02, you get the benefit service the whole time that you satisfy them. There's no question he satisfied the terms of 2.02B, which is for someone who has had a workplace injury for the entire time period until he's basically age 65 in 2013, and he satisfies all of those pieces. Instead, they come up with reasons as to why you still have to read a five-year limitation from 2.02C into 2.02B. And I would suggest that there are multiple reasons which we go through in our brief why that's not the case. The key ones are, first of all, they said any. They didn't say some combination of these. These plans, as we all know, are written by the most careful draftsman in the profession. They have to comply with the IRS. They have to comply with the Department of Labor. They have to take actuarial formulas and turn them into English language. If they said you get benefit service time for any of these circumstances, that's what they meant. Second, 2.02B never has a temporal limitation. It says unless you get long-term disability benefits, you only get 12 months of service time while outlawing workers' comp. But then it says if you qualify for long-term disability benefits as well, there's no temporal limitation. But the thing that just confused me is baked into those definitions is the concept that you are an employee. Well, not necessarily. And, again, that refers to employment. And then to go back to the definition of employee under the plan, that's when, under that definition, there seems to be a problem, which is why I thought you were arguing about the settlement. Potentially that's forced because you're using the very terms in the settlement, the employment, that are in 2.02. And so the settlement might resolve it for you. But absent that, doesn't the text of the plan hurt you because it only is contemplating these arguments work for those persons who have an employment, and they're contending that under the plan definition of employee, you fail for other reasons. And you don't contest that, that under that definition, you fail. Well, in 2.02, and I think this is the question, it talks about the use of benefit service and how you can measure it. And then it says different definitions of what that is. And one of them includes absence without pay for work because of injury or occupational disease. And that's what, on the facts of the administrative record, if I may finish, Your Honor, Mr. Van Nurek clearly was. He was always an employee, as the settlement agreement shows. But he was also an employee because, and no one disputes this, he was hired in 1993, and the reason he wasn't on the work site after 2000 is a workplace injury. No different than a traditional worker's comp claim if a mechanic has a jet engine fall on his foot. They don't, they're absent from work, but their employment status has never ended. So he would fit within 2.02B, even in a world in which the settlement agreement didn't exist at all. Counsel, does the record establish that your client received worker's compensation disability benefits? It establishes it to the extent necessary for these purposes. And let me be clear, I'm not trying to play games. In the backdrop of a claim like this, you have an unrepresented plan participant, which is almost always the case, and a plan administrator. The participant submits everything he can think of. So Mr. Vendura knows that worker's comp benefits are an issue, and he needs to prove 2.02B. So, and we cite to the pages in our brief, he goes out and he gets orders, proceedings, claim filings, whatever he has in his record from the California worker's comp proceedings, and submits them. The plan administrator here, essentially in the denial letters, accepts that. They never dispute that you've established worker's comp benefits. Now, in this type of a case, for factual determinations, we're limited to that administrative record. So all of the evidence in the record shows the receipt of worker's compensation benefits. They claim he hasn't proven it sufficiently, but the only reason there isn't more evidence is because he's self-represented, and they never said, we're denying it because you haven't proven it. Please submit evidence further beyond these 5 or 6 pages. One last. So, I understand your argument about C and the language of C. Yes. What do you do about the fact that C follows from the paragraph set at the top of 2.2, which encompasses A through G, which is only contemplating any countermeasure to explain the problem that's occurred while a given employee is a participant. So why isn't that the gateway to get into B or C, that you must be an employee, just as a textual matter? Well, I think 2.01 is any employee who meets the definition of participant. Yeah, on 2.02, years of benefit service, you rely on C, and you say C doesn't reference employment, it references work. But the gateway to C is the lead-in paragraph to 2.2. It works all the way out by a colon, and the only people who can get there are, I think, a given employee. So if you're not a given employee, how do you get into C at all? Well, I think that that's exactly right. It runs from a starting trigger of this time goes from a participant's employment. But in a given employee, the definition of employee in the plan kicks you out, you acknowledge. That definition just standing on its own, you don't need it. No, I believe that he does need it in the same way that he has always been an employee. He's never been removed from employment. He's absent from work. He's an employee absent from work because he's out on workers' comp, because he's had an injury and he's out on long-term disability. Not because his employment status ever ended. Thank you, Your Honor. Thank you. Is that there? Good morning. Good morning, Your Honors, and may it please the Court. Let me start off briefly by discussing the standard review because I agree with Judge Lopez's question that that is an essential issue in resolving these illicit disputes. As the briefs indicate, there have been a number of decisions by this Court addressing when de novo review is necessary and when abuse of discretion review can be available if the plan provides for such review. All those cases set forth the same principle, however, which is when interpreting the plan, the plan in isolation, abuse of discretion review can be available. When interpreting some sort of extrinsic document or statute as to which the plan administrator cannot be given deference, then de novo review applies here. So the settlement agreement, we agree, is subject to de novo review. The District Court found, and we agree here on appeal, that the settlement agreement does not modify the terms of the plan. So when subsequent to the settlement agreement, the plan administrator and subsequently the District Court were reviewing the interpretation of the plan, the question is whether the plan administrator was arbitrary or capricious in interpreting the language of the plan. Can I just understand, when the administrator is doing that, and just to understand your position, if he was an employee under the plan or one who is an employee under the plan meets that definition and otherwise has the attributes of this plan, do you believe he then would win? I don't think the question of whether or not he is an employee is dispositive. Why not under the plan? It's necessary but not sufficient. And I think the answer to that is that it's section 2.2a of the plan. So the header of 2.2 says you get years of crediting service or months of crediting service for any month in which you are an employee who is a participant who satisfies any of the following seven characteristics. And the first one is receipt of compensation from the controlled group for the performance of services. So if you are an employee who does not get paid for having done work for the company, you don't accrue benefit services. The calculation contemplated by 2.2 isn't find the start date of employment and the end date of employment and everything in between is a benefit accrual period. You're saying you have to satisfy all seven of these? No, any of them. But the first one is the one that will typically be satisfied, which is you're getting paid for doing work. So any month where you are working for Northrop Grumman or previously TRW. You're saying he doesn't satisfy A? He doesn't satisfy A, no, because he was not. I thought his argument was that he satisfied C. Well, exactly. That's his argument. We disagree, of course. But in terms of understanding the significance of being an employee, being an employee alone is not sufficient. I understand that, but as long as he... So you're saying even if you're an employee, he loses because of the relationship you made him to C and B? Correct. So the settlement determining that he's an employee, which you dispute whether the settlement does that, wouldn't enable him to win because it would just kick him back to the plan and then we'd have B and C. Right, exactly. And my adversary's argument is that the word any means that these seven provisions must be read to be independent. And I don't think that's the correct inference from the word any. So can I just understand, why isn't it perfectly reasonable to understand C just the way he's contending it should be read? Because it seems to be talking about a different situation from the situation contemplated in B. Well, I don't think anybody disputes the interpretation of C. C says there's a 60-month limitation for anybody who is receiving long-term disability benefits. The question is what 2.2B means. And the interpretation of the administrators is that 2.2B cannot be read as providing unlimited benefits for an individual who is on... But why not, since it's talking about a very different situation than C that doesn't have the express limitation? Well, you're right. So 2.2B is speaking about workers' compensation. And it says you accrue benefits for periods when there are workers' compensation. And there's a proviso. Provided that you don't get any more than 12 months' compensation for this period. And there's an exception to that proviso that says unless you qualify for long-term disability benefits. It seems to me you... I know that perhaps the world's best grasp of lavish time on these kinds of agreements. But it does seem to me there's a fair argument that there is some ambiguity between B and C. I mean, you just look at B in isolation. It suggests that if you meet the conditions of B, there is no limit on the years of service for which you receive credit under the pension plan, so long as you're receiving disability benefits. Then you go to C, and then you find a provision that actually limits the years of credit that you get when you're receiving disability benefits. And it's your argument that you have to... The plan administrator says we look at those together, and we think the best interpretation is that C establishes the limitation on the years of credit you get when you receive disability. And that's the interpretation that's offered. There is an ambiguity. You sort of have to try to fit them together. I don't see how you can argue that these provisions are transparently clear as to how they apply in a situation like this. Our position is not that this is unambiguous and this is the only conceivable way one could read this plan. However, that's not our burden. It's a reasonable interpretation. Our burden is to establish it's a reasonable interpretation. So the question about 2.2B is the exception to the proviso. Does that mean that it is affirmatively creating benefits itself, or is it essentially cross-referencing 2.2C? And the latter interpretation argues the correct one, because 2.2B is in a sense an inchoate explanation of what it means to be on long-term disability. 2.2B says that the one-year exception or the one-year limitation does not apply if one is eligible for long-term disability benefits. 2.2C, by contrast, explains what it means to be on long-term disability benefits. It specifies that these aren't any private long-term disability benefits. These are the long-term disability benefits that are offered by one of the covered companies. But why wouldn't, since the conditions that get you into B and the conditions that get you into C are distinct, because of injury or occupational disease received in the course of his employment, in other words, something happened to you while you were working for us, versus something that just happened to you, why wouldn't it seem that we're going to be a little stingier when you're trying to make us your insurer for anything that happens to you than we would be when you're saying, because of something that happened during your employment with us, you want to get covered. It seems quite logical that those are distinct things, one of which was capped. And the thing that was capped would be the thing you think they would be stingier on, but the thing that is not capped. Let me respond in two ways. First, in terms of trying to define what the settlor's intent was in crafting this language, there's a good reason why the administrator gets deference in these circumstances, because the question is not what the participant understood or could have wanted the plan to mean. The settlor has full authority to decide what benefits it is going to provide, and that's why discretion of understanding why certain terms might have been crafted in a certain way is relevant. The other substantive answer is that the 1997 plan language, I think, disproves that interpretation of 2.2b. So what we're dealing with here, when an ERISA plan is amended, there are two ways to do that. You can either write an amendment, which could be a couple pages, or you can restate the whole document. The operative plan language here exists as just an amendment. So you have a 1997 plan as amended by the 1999 page that changes 2.2c. So the 1997 base document has 2.2b and it has 2.2c, but there is no five-year limitation at 2.2c. So in that circumstance, 2.2c says you can accrue unlimited months of crediting service if you are a long-term disability. 2.2b says you can accrue benefit service for periods when you are on workers' compensation, provided you can't get more than a year, unless you're eligible for long-term disability. Now, in that framework, if we ask ourselves the question, is that exception to the provision of 2.2b an independent source of benefits, or is it a cross-reference to 2.2c explaining that you get the better benefits, you get the longer period of time, even if you were out on workers' compensation so long as you qualify for long-term disability? Well, the answer has to be that it is referencing 2.2c and giving you the better set of benefits because there was no possible way in 1997 that 2.2b could be giving you more than 2.2c. And this ultimately goes back to the other side's point that the word any means somehow that these provisions are going to be independent. We agree that they have to do different work, but it doesn't mean that they are mutually exclusive and shouldn't be read in context with each other. That's simply not what the word any means. Now, stepping back to the first part of this dispute about the settlement agreement itself, which, as we've acknowledged, that is subject to de novo review. And under de novo review, our view as a district court was entirely correct that in order to satisfy the requirements of 2.2a, one needed to establish both that an individual was an employee and that the employee was performing services. Now, there's some language in the settlement agreement that says that the payment that accompanied the settlement agreement shall be deemed other compensation and not included in the calculation of benefits under the salary or pension plan. So this is not an open question that the parties did not contemplate. The parties actually contemplated that this was not payment for services rendered and should therefore not be construed as providing some additional benefit. What's the significance of the language in the settlement agreement referring to his employment? What could that be other than an agreement that he is an employee? I think it is an agreement that he has retained employment status. Why isn't that an agreement that he is an employee? To the extent that you're trying to win because he doesn't qualify under 2.2b or c because he doesn't meet 2.2's requirement to be an employee, doesn't the settlement agreement decide that against you? I don't think that's the argument we're making here. So you're content to have it be that the settlement agreement makes it clear he's an employee? Yes. Yes, that is consistent with our expectation here. So the purpose of 2.2, he's an employee. You're not disputing that? No, we're not disputing that he's an employee, but he still doesn't satisfy. And that's just because of your reading of b and c? Because of our reading of b and c. And the settlement agreement itself does not qualify him for a, which is the only way under the settlement agreement could possibly play into this. So that then works its way down to the abuse of discretion standard, and the question is whether the plaintiff administrator was reasonably interpreting the settlers intent. Now, there are some other arguments that the plaintiff initially tried to raise before the district court, the sorts of equitable stoppable arguments of this is what I was told, I was confused, and I relied on it. But those arguments are no longer before this court. So the question truly is whether there is a reasonable interpretation of the plan language that the plan administrator adopted. And I should note also that in the reply brief, Mr. Madura makes various waiver arguments with respect to our reliance on the amendments to the plan in the 1997-1999 dynamic. So I should point out that the denial letter that responded to his appeal to the plan administrator specifically referenced the amendment history, this is at page 1236 of the appendix, as one of the reasons why he was interpreting 2.2b and c the way that it was doing so. In any event, the waiver rule, which is in the regulations at 29 CFR section 2560.503-1, requires only that the administrator provide the specific reason or reasons for the adverse determination and a signation to the provision of the plan that the administrator is relying upon. That was surely satisfied here regardless of the level of detail into why the provision was being interpreted in that particular fashion. In any event, this court's precedence as recently as this year in a case called Blue Cross Blue Shield of Massachusetts has acknowledged that any waiver argument typically would require a demonstration of prejudice by the plaintiff, which has not been made here and would not be possible here. Thank you. Thank you, Your Honor. Thank you, Your Honors. Very briefly, a few quick points. Just to return to this question of whether he was an employee, in both denial letters that were issued to him denying his claim for 20 years of benefit service, Northrop Grumman expressly stated that in accordance with the settlement agreement, you terminated employment effective February 27, 2013. So they actually follow the settlement agreement in determining when his employment was terminated. Well, the question is intent here to a certain extent. The settlement agreement, as they admit, makes him an employee until 2013, was intended to have that effect and the coordination clause with the plan says we're reverting to the settlement agreement. 2.02A is simply their draftsman's way of traditional employment. You work here. And that if you do that, if you satisfy that standard, then you're entitled to benefit service. Our position is the settlement agreement was intended by both sides to give him that status. A. A. To match up to it. Even though Mr. Vendura, representing himself, didn't know enough of WhistleR to parrot those words. The only language in the settlement agreement that would get you into A is the use of the word employment. That he's an employee. And the 2.02 uses language beyond employment in A. Yes. And there's nothing that tracks that language in the settlement. No. The purpose of the coordination clause was to avoid having to track it. Maybe I've been missing something all along. You're relying for your claim of 20 years of service under the pension plan. You're relying on 2.2A? No. And I want to make that clear. We're relying on the settlement agreement makes him as though he's an employee, which under the plan is reflected in 2.02A is enough. Traditional status as an employee. But what we're really relying on is 2.02B. He satisfies that standard. And a couple of things I wanted to highlight. I don't think they disagree he satisfies those standards. They just say he's still limited to the five years of 2.02C. And our position, and I think this is central here, is that B doesn't say that. It would have been very easy to write B to say that. All you have to do is stick at the end of it. That the unlimited terms of if you satisfy LTD, but subject to the 60-month limitation of C. I think we're back where we began. Everything depends on the standard of review, frankly. And, again, that becomes his question. They can't walk away from the language they chose. Thank you, Your Honor.